UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In Re:                                           Case No. 6:08-bk-04327-KSJ
                                                 Chapter 11
MIRABILIS VENTURES, INC.,

        Debtor.

_____/

MIRABILIS VENTURES, INC.                         Adv. Pro No. 6:08-ap-00228-KSJ

        Plaintiff,

v.

JAMES MOORE & CO., P.A., a
Florida limited liability corporation,
and E. JAMES HUTTO, an individual,

        Defendants.

_____/

## AMENDED MOTION FOR WITHDRAWAL OF THE REFERENCE, INCORPORATED MEMORANDUM OF LAW AND DEMAND FOR JURY TRIAL (APPLICABLE TO DEBTOR/PLAINTIFF'S AMENDED COMPLAINT)

COME NOW JAMES MOORE & CO., P.L., (incorrectly reflected in the caption as James Moore & Co, P.A.) a Florida limited liability corporation and E. JAY HUTTO (incorrectly reflected in the caption E. JAMES HUTTO) an individual (Defendants) who state as follows:

### Introduction

This is a non-core Adversary Proceeding asserting tort claims of negligence (Count I), breach of fiduciary duty and self-dealing (Count II), negligent misrepresentation (Count III), professional negligence (Count IV), negligent supervision (Count V), and alternative Counts (Count VI), fraudulent transfer under 11 USC § 550(a), and (Count VII), fraudulent transfer

under 11 USC § 544(b) and Fla. Stat. § 726.101 et seq, brought by the debtor, Mirabilis Ventures, Inc. (hereinafter " Mirabilis").    The original adversary proceeding was filed on December 8, 2009. An Amended Complaint was filed on April 17, 2009, a copy of which is attached hereto as Exhibit "A".    Mirabilis and other related entities have been indicted for alleged federal criminal violations in connection with the activities described in the Complaint (See Case No. 6:08-cr-00231-JA-KRS, U.S. Dist. Ct., M.D. Fla., D.E. 1).

The principal and controlling person of Mirabilis, Frank Amodeo (hereinafter referred to as " Amodeo"), has not only been indicted, but has pled guilty and been sentenced for criminal violations in connection with these activities. In both his written Plea Agreement with the Government, and in open court at his Change of Plea Hearing, Amodeo has admitted under oath his criminal responsibility for illegally diverting $181,000,000 of federal payroll withholding tax trust funds (asserting however in the Plea Agreement that the total is "only" $172,000,000). (See Case No. 6:08-cr-00176-JA-GJK-1, U.S. Dis. Ct., D.E. 38, 41).

By this Motion, Defendants request that the District Court withdraw the reference of this adversary proceeding and effectively transfer it to the District Court so that it may be heard by The Honorable Gregory Presnell, United States District Judge. The matters alleged are non-core claims, the Defendants demand a jury trial, and the interests of judicial economy will be served as Judge Presnell currently has jurisdiction over some of the related civil and criminal proceedings involving both Mirabilis and Amodeo.

1.    Defendants respectfully demand a trial by jury on all triable issues pursuant to the Seventh Amendment to the Constitution of the United States of America and F.R.Civ.P. 38(b)(1).

2.    Defendants do not consent to a jury trial before the Bankruptcy Court pursuant to Fed. R. Bankr. P. 9015.

3.     As will be explained more fully herein, jurisdiction is improperly placed in the Bankruptcy Court, and this case should be transferred to the District Court.

## Summary of Relief Requested

4.     Pursuant to 28 U.S.C. § 157(b), and in the interest of the policies underpinning the Bankruptcy Code and in the interest of judicial economy, the reference of this adversary proceeding to the Bankruptcy Court should be withdrawn, and this action should be heard by the District Court. Defendants ask the District Court to withdraw the reference, and transfer this case to the District Court for trial before a jury. Specifically, Plaintiff's cause of action is non-core, and because Defendants demand a trial by jury and do not consent to jury trial in the bankruptcy court, the action properly belongs in District Court pursuant to § 157 and the Seventh Amendment of the Constitution. Additionally, section 157(b)(5) requires mandatory withdrawal of the reference because the Plaintiff's cause of action is founded in personal injury tort law. The following sets forth the legal authority and argument supporting these conclusions.

## Brief Factual Background

5.     Mirabilis Ventures, Inc., is the Debtor in main bankruptcy case and the Plaintiff in this adversary proceeding.

6.     On May 27, 2008, the Plaintiff filed a chapter 11 bankruptcy petition in this Court (Doc. No.1; main case).

7.     On December 8, 2008, the Plaintiff filed this adversary proceeding.

8.     An Amended Complaint (Document #22) alleges the following counts:

- Negligence
- Breach of Fiduciary Duty
- Negligent Misrepresentation
- Professional Negligence

3

- Negligent Supervision (Against Moore)

- Fraudulent Transfer Received by Defendant Moore Under 11 U.S.C. §§548 and 550(a)(2)

- Fraudulent Transfer Received by Defendant Moore Under 11 U.S.C. §§544(b) and 55(A)(2), and Fla. Stat. §§726.105(1)(a) and (b), 726.106(1) and 726108

9.     The Complaint alleges that the subject adversary proceeding is a core proceeding (paragraph 4 of the Complaint).

10.     The following related cases are pending in U.S. District Court before The Honorable John Antoon[1]:

- U.S. v. AEM, Inc., Mirabilis Ventures, Inc., et al., Case No. 6:08-cr-00231-JA-KRS
- U.S. v. Amodeo, Case No. 6:08-cr-00176-JA-GJK

11.     This Defendants' prior Motion was transferred by Judge Antoon to Judge Presnell.

### Withdrawal of the Reference

12.     The district courts have original, non-exclusive jurisdiction over civil matters that arise under or are related to cases under title 11. 28 U.S.C. § 1334(b). Related proceedings are deemed to be those where the" outcome . . . could conceivably have any effect on the estate being administered in bankruptcy." 1 Collier on Bankruptcy § 3.01[4][c][ii] (15th ed. 2008). The district courts are directed to refer" all proceedings arising under title 11 or arising in or related to a case under title 11" to the bankruptcy judges for the district. 28 U.S.C. § 157(a). But the district courts may withdraw the reference of a case or proceeding if the standards set forth in

---

[1] There are additional cases involving Mirabilis or Amodeo which are pending in the District Court for the Middle District of Florida, including Mirabilis Ventures, Inc., et al. v. Palaxar Group, LLC et al., Case No. 6:07-cv-01788-JA-GJK, which is also pending before Judge Antoon.

section 157 are satisfied. 28 U.S.C. § 157(d).

13.    In order to avoid the constitutional problems discussed by the Supreme Court in Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 102 S. Ct. 2858 (1982), Congress created the distinction between "core" and "non-core" bankruptcy proceedings. See Cant'l Nat'l Bank v. Sanchez ( In re Toledo), 170 F.3d 1340, 1347 (11th Cir. 1999). If a proceeding is core, then the district court applies traditional standards of appellate review to the bankruptcy court's findings. See id.; see also 28 U.S.C. § 158(a); Fed. R. Bankr. P. 8013. Conversely, if a proceeding is non-core, then the bankruptcy court is permitted only to submit proposed findings of facts and conclusions of law subject to de novo review by a district court.

14.    "Core" proceedings are defined by section 157(b)(2) of title 28, which sets forth a non-exclusive list of matters defined as "core." 28 U.S.C. § 157(b)(2)(A)-(P). The items A through P in the list can generally be grouped into four categories plus a "catchall" category defined by subsection (O).[2] 1 Collier on Bankruptcy § 3.02[3] (15th ed.2008).

15.    28 U.S.C. §157(b)(2)(0) provides in pertinent part as follows:

> Core proceedings include, but are not limited to - ... other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.

28 U.S.C. § 157(b)(2)(0) (emphasis added). The bankruptcy judge has authority to determine whether a proceeding is core, and the determination includes consideration (but not solely) of whether the resolution of the proceeding may be affected by State law. 28 U.S.C. § 157(b)(3).

---

[2] Collier's discusses five categories: (1) matters of administration, (2) avoidance actions; (3) matters concerning property of the estate, (4) omnibus categories, and (5) cases filed under chapter 15 of the Bankruptcy Code. The fourth category (omnibus) includes only two of section 157(b) (2) 's items: (e) - "counterclaims by the estate and against persons filing claims against the estate"; and (0) - "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims." Collier's later refers to subsection (0) as the "catchall" because all the other items in section 157(b) (2) 's list arise directly from the bankruptcy case.

Rather, the nature or source of the cause of action and not the governing substantive law is to be determinative. 1 Collier on Bankruptcy § 3.02[6][a] (15th ed. 2008).

16.    Subsection (O) expressly excludes causes of action founded in personal injury tort law from "core" jurisdiction. Further, section 157(b)(5) provides that causes of action founded in personal injury tort must be heard in the district court and not in the bankruptcy court:

> The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending.

28 U.S.C. § 157(b)(5).

17.    Accordingly, if a cause of action falls within Section 157(b)(5), the district court must withdraw the reference and such an action must be heard by the District Court.

18.    The jurisdictional framework governing bankruptcy cases further provides that the district court has discretion to withdraw the reference. 28 U.S.C. § 157(d) provides as follows:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown.

28 U.S.C. 157(d) (emphasis added). Section 157(d) does not refer to "core" or "non-core" proceedings but rather "any proceeding," thereby permitting even "core" proceedings to be withdrawn. 1 Collier on Bankruptcy § 3.04[1] (15th ed. 2008). Presumably, in an effort to thwart withdrawal of the reference, Plaintiff has alleged two additional counts of alleged fraudulent transfer of funds to Moore which Plaintiff claims are voidable under 11 U.S.C. §548 and 11 U.S.C. §550(a). Such allegations are a subterfuge to distract from the main issues raised in the adversary proceedings which are clearly non-core personal injury claims. The "transfers" at issue were simply the payments for these Defendants' professional fees for services rendered.

6

Counts I through V are non-coreCounts which may question the quality of said services. However, it is clear from the allegations in said Counts, that Counts VI and VII are frivolous and are asserted solely to try and circumvent Defendants' request for withdrawal of the reference. Furthermore, even if Counts VI and VII are deemed core claims, 28 U.S.C. §157(d) permits this Court to exercise jurisdiction over core and non-core proceedings in the same proceeding – especially under the circumstances of this case where all claims arise from the same nucleus of facts, i.e., the rendering of accounting services. In the instant case, as has previously been recognized, mandatory withdrawal of reference is appropriate when resolution of the adversary proceeding involves substantial and material consideration of non-bankruptcy issues. See Ponce Marine Farm, Inc., v. Browner, E.P.A., 172 B.R. 722, 724 (D. P.R. 1994).

## The Jury Trial Issue

19.    A debtor's suit against a defendant based on an allegedly fraudulent conveyance does not strip the defendant of its right to jury trial. See Granfinanciera, S.A. v. Nordberg, 492 U.S. 33 (1989). While jury trials can be conducted in bankruptcy court, they are only permitted where all the parties have expressly consented to such jury trial.[3] 28 U.S.C. 157(e); see also Control Center, L.L.C. v. Lauer, 288 B.R. 269,279 (M.D. Fla. 2002) (Conway, J.).    The Defendants have not consented to such jury trial in the instant case. It has been held that the inability of the bankruptcy court to hold a jury trial without the parties' consent is sufficient grounds for withdrawing the reference. See Control Center, 288 B.R. at 279 ("unless Lauer consents to trial by jury before the bankruptcy court, or in the alternative, Lauer waived his right to a jury trial by filing a counterclaim, this matter must be transferred to the district court"); Growers Packing Co. v. Community Bank of Homestead, 134 B.R. 438 (Bankr. S.D. Fla. 1991). In some cases the district court will order that the reference not be withdrawn until the case is

---

[3] Although such express consent can be implied from the party's filing of a counterclaim in the proceeding.

ready for trial, leaving pretrial motions to the bankruptcy judge. See, e.g., Official Comm. v. Lay (In re Enron Corp.), 295 B.R. 21, 27- 28 (S.D.N.Y. 2003). In such cases the familiarity of the bankruptcy court with the matters at issue makes that court a more efficient forum for the pre-trial matters.  But where the matters at issue do not directly involve the bankruptcy case itself, and as here, where the District Court has taken jurisdiction over several related civil and criminal matters[4] then it is more economical to try the entire case in District Court.  See In re Clay, 35 F.3d 190, 195 (5th Cir. 1994)(expressly recognizing that district courts are better designed to conduct jury trials than bankruptcy courts).  This is the exactly case here.

20.    If the parties fail to consent to a jury trial of non-core issues before a bankruptcy judge and the Seventh Amendment affords a right to trial by jury, withdrawal is appropriate. In re Cinematronics, Inc., 916 F.2d 1444, 1450 n. 5 (9th Cir. 1990). To fail to withdraw the reference could cause a violation of either the Seventh Amendment or the statutory provisions applicable to bankruptcy jurisdiction:

> If the district courts refused to review bankruptcy court jury verdicts on noncore matters with the de novo standard, they would be acting contrary to express statutory mandate, see section 157(c)(1). Yet, if they reviewed the bankruptcy court verdicts de novo they would be at odds with the [re-examination clause of the] Seventh Amendment.

Id. at 1451.

### I.    The District Court Should Withdraw the Reference Because the Main Issues in this Adversary Proceeding are Non-Core and the Defendants Have Demanded a Trial by Jury

21.    In a relatively recent case involving the withdrawal of the reference, Judge Conway has held that only two factors are necessary to determine whether the movant's request

---

[4] The Plea Agreement and resulting criminal conviction of Amodeo on May 26, 2009, which is based on Amodeo's sworn admissions directly contrary to the allegations contained in the Adversary Complaint, give rise to the possibility of inconsistent results in adjudication of the same set of operative facts which give rise to the claims asserted by Mirabilis. Having the proceedings determined in the same court before the same judge would serve the goals of judicial economy and avoiding inconsistent results. Likewise, if Mirabilis is convicted in the pending

for withdrawal of the reference should be granted: first, whether the claims are core or non-core, and second, whether the movant is entitled to a jury trial pursuant to the Seventh Amendment. See Control Center, 288 B.R. at 274 (approving motion to withdraw the reference and stating "[i]n analyzing [movant's] Motion to Withdraw Reference and for Transfer to District Court (Doc. No.3), this Court will consider two factors: (1) whether the claims made in this adversary proceeding are core or non-core; and (2) whether Lauer is entitled to a jury trial pursuant to the Seventh Amendment of the United States Constitution on any of the claims asserted.").

### Six of the Plaintiff's Claims are Clearly Non-Core

22.    The Plaintiff relies in large part on the § 157(b)(2)(O) "catch all" for its assertion that its claims are core. However, this reliance is misplaced.

23.    The bare fact that a potential recovery could affect the reorganization plan and the Plaintiff's" debtor-creditor relationship" with the Defendant is insufficient to trigger "core" status of the Plaintiff's claims. Such a reading would completely obliterate the distinction between core and non-core altogether. This conclusion has already been reached by the Middle District Court in Control Center:

> With respect to the catch-all provision cited by Control Center, while the claims in this adversary proceeding could conceivably result in a damage award affecting Control Center's debtor-creditor relationships and the company's reorganization plan, if this Court found core jurisdiction on that basis, then virtually any claim would entitle a bankruptcy court to enter final judgment. See Marill Alarm Systems, Inc., v. Equity Funding Corp (In re Marill Alarm Systems, Inc.), 81 B.R. 119, 123 (S.D.Fla. 1987) aff'd without opinion, 861 F.2d 725 (11th Cir. 1988). This Court finds that such a broad construction of § 157 would "ignore the constitutional proscription" limiting the jurisdiction of bankruptcy courts as set forth by the Supreme Court in Northern Pipeline. Id.

Control Center, 288 B.R. at 276. Therefore, this Court should determine whether the Plaintiff's

proceedings before Judge Antoon, the same considerations regarding judicial economy and inconsistent results would also apply.

claims should be considered" core" or "non-core."

24.     Under § 157, core proceedings are those" arising under title 11 or arising in a case under title 11," while "non-core" proceedings are synonymous with those "otherwise related" to the bankruptcy estate. Control Center, 288 B.R. at 276 (citing Cont'l Nat'l Bank v. Sanchez ( In re Toledo), 170 F.3d 1340, 1349 (11th Cir. 1999) (interpreting subsection (b)(l) and (c)(l) of 28 US.C. § 157)).

25.     In Cont'l Nat'l Bank, the Eleventh Circuit explained that core matters are those which arise from title 11, and provided this helpful guidance:

> [i]f the proceeding involves a right created by the federal bankruptcy law, it is a core proceeding; for example, an action by the trustee to avoid a preference. If the proceeding is one that would arise only in bankruptcy, it is also a core proceeding; for example, the filing of a proof of claim or an objection to the discharge of a particular debt. If the proceeding does not invoke a substantial right created by the federal bankruptcy law and is one that could exist outside of bankruptcy[, it] is not a core proceeding; it may be related to the bankruptcy because of its potential effect, but under 157(c)(1) it is "otherwise related" or a non-core proceeding.

Cont'l Nat'l Bank, 170 F.3d at 1348 (quoting Wood v. Wood (In re Wood), 825 F.2d 90, 97 (5th Cir. 1987) and referring to the decision as the "most helpful explanation of what is a core proceeding").

26.     Here, none of Plaintiff's claims alleged in Counts I through V arise from rights provided by title 11. Count VII asserts a state court action brought pursuant to Florida Statute (pled as a claim in the alternative). In Counts I through V, all Plaintiff's claims are common-law tort claims. These common-law claims do not arise only in federal bankruptcy law; rather, they arise only *outside* federal bankruptcy law. The common-law claims do not invoke a substantial right created by federal bankruptcy law. The common-law claims can and do exist outside of bankruptcy. They are only "otherwise related" to the bankruptcy case, and are non-core.

27.     In <u>Control Center</u>, Judge Conway found claims for breach of contract, defamation, and trademark misappropriation to be independent of the bankruptcy code or any other federal law, and held they were non-core. 288 B.R. at 277. This Court should find the common-law Plaintiff's claims in this case to be similarly non-core.

28.     With respect to Count VI of the Amended Complaint, which purports to allege a fraudulent transfer in an effort to avoid withdrawal of the reference, this Court may either withdraw the reference for both core and non-core causes of action or alternatively, may request a report and recommendation from the Bankruptcy Court as to said counts.  Interestingly, this singular "core claim" is pled in the alternative with Count VII, which, as noted above, is based upon Florida Statutes, not the Bankruptcy Code.

**Defendants Demand a Jury Trial and
<u>Do Not Consent to Trial in the Bankruptcy Court</u>**

29.     The United States Supreme Court has held that, as a general rule, monetary relief is legal in nature, and that claims for such relief give rise to a right to a trial by jury. See <u>Feltner v. Columbia Pictures Television, Inc.</u>, 523 U.S. 340, 352, 118 S.Ct. 1279 (1998).

30.     All of Plaintiff's claims demand monetary relief which is legal, as opposed to equitable, in nature, and as such, give rise to a right to trial by jury. With regard to a single equitable claim, the Supreme Court has determined that if a "legal claim is joined with an equitable claim, the right to jury trial on the legal claim, including all issues common to both claims, remains intact." <u>Curtis v. Loether</u>, 415 U.S. 189, 196 n. 10, 94 S.Ct. 1005 (1974) (internal citations omitted). The right to a jury "cannot be abridged by characterizing the legal claim as 'incidental' to the equitable relief sought." <u>Tull v. U.S.</u>, 481 U.S. 412, 425, 107 S.Ct. 1831 (1987); <u>Burns v. Lawther</u>, 53 F.3d 1237, 1242 (11th Cir. 1995) ("When legal and equitable claims are joined in the same action, the right to jury trial on the legal claims, including all issues

11

common to both claims, remains intact"); see also <u>Wall v. Trust Co. of Ga.</u>, 946 F.2d 805, 808 n.

1 (11th Cir. 1991) (accord).

31.    Moreover, the Middle District has held that the Constitution prohibits any trial by

jury of non-core matters in the bankruptcy court - regardless of whether the claims are legal or

equitable. See e.g. <u>Naturally Beautiful Nails, Inc. v. Wal-Mart Stores, Inc.</u> (In re <u>Naturally</u>

<u>Beautiful Nails, Inc.</u>), 252 B.R. 574, 576 (Bankr. M.D. Fla. 2000) (the Constitution prohibits trial

by jury [in bankruptcy court] in a non-core or related matter").[5]

32.    The Defendants have the right pursuant to the Seventh Amendment to the

Constitution of the United States to a trial by jury.

33.    The Defendants have properly demanded a trial by jury.

34.    The Defendants do not consent to a jury trial in the Bankruptcy Court, nor have

the Defendants filed a counterclaim in this proceeding, nor a proof of claim in the bankruptcy

case, which could possibly be deemed a submission to the bankruptcy court's jurisdiction.

35.    Because jury trials are not permitted in bankruptcy courts if the parties do not so

expressly consent, and because the Plaintiff's claims are non-core, pursuant to § 157 and the

Seventh Amendment of the Constitution of the United States of America, the District Court must

withdraw the reference and transfer the case to the District Court for trial.

## II.    The District Court Should Use its Discretionary Authority to Withdraw the Reference in the Interest of Judicial Economy

36.    The facts and law involved with Plaintiff's claims are largely unrelated to and

separate from its bankruptcy case, yet, as described above, the facts are substantially similar to

cases already pending in the District Court and in which Amodeo, the principal of Mirabilis, has

---

[5] 5 In Control Center, this Court, discussing Naturally Beautiful Nails and the Constitutional problem, noted that "[b]ecause a district court's de novo review of a bankruptcy court's findings on all non-core matters is incompatible with the reexamination clause of the Seventh Amendment, this Court finds grave problems with that standard of review."

admitted to facts which are directly contrary to the allegations in this adversary proceeding complaint.

37.     The District Court is already hearing more than one case involving the Plaintiff, and unlike the bankruptcy case, these cases do feature facts and law that are common to the instant cause of action.

38.     Even if the Bankruptcy Court were to hold the trial, it may only issue proposed findings of fact and conclusions of law which the District Court must still review de novo.

39.     Because the District Court is already involved in more than one case with the Plaintiff, and is already familiar with common facts involved in this complaint, it would be redundant and wasteful of judicial resources for the Bankruptcy Court to remap the same ground.

40.     Therefore, pursuant to § 157(d), the District Court should exercise its discretionary authority to withdraw the reference and transfer the case to the District Court in the interest of judicial economy.

### III.     Mandatory Withdrawal is Appropriate Pursuant to § 157(b)(5)

41.     Section 157(b) (5) <u>requires</u> the District Court to withdraw the reference for matters involving personal injury tort.

42.     Five of the seven counts in Plaintiff's Complaint are clearly personal injury torts founded in traditional non-intentional tort negligence (negligence, professional negligence, negligent misrepresentation, and negligent supervision). The second count for breach of fiduciary duty is arguably a personal injury tort but in any case arises from the same facts and circumstances giving rise to the four negligence-based counts.

43.     In the Middle District, courts hew to a broader reading of "personal injury tort" beyond those involving physical injuries to include personal injury torts involving economic

harms. Control Center, 288 B.R. at 286 (finding plaintiff's" claim for defamation must be tried in a district court, since a district court is required to order that personal injury tort claims be tried in a district court"). Courts in other circuits have interpreted the phrase "personal injury tort" along a spectrum, beginning from a narrow definition including only those featuring a trauma or physical injury, see e.g. Massey Energy Co v. West Va. Consumers for Justice, 56 C.B.C. 2d 1585 (E.D. Va. 2006).

44.    Even thought the Plaintiff has amended the Complaint to add two counts founded on bankruptcy and state law, this Honorable Court may still withdraw the case in whole or in part. The District Court must still try the claims involving personal injury torts, but could leave the non-personal-injury-tort claims to be tried in Bankruptcy Court. However, even though this may be technically possible, in the interests of judicial efficiency the Defendants respectfully submit that the District Court should hear all the claims to avoid redundant litigation.

45.    Because withdrawal is mandatory when the proceeding involves personal injury tort claims, and because this proceeding involves personal injury tort claims, the District Court should order the case to be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose. In both cases, the proper venue is the Middle District of Florida.

46.    This Motion has been filed both in the United States Bankruptcy Court and in United States District Court (Middle District).

WHEREFORE, the Defendants request that the Court withdraw the reference to the Bankruptcy Court, and transfer the entire case to District Court for all further proceedings, and for such other and further relief as is just and proper.

Dated this 29th day of June, 2009.

> /s/Charles J. Meltz
> CHARLES J. MELTZ, ESQUIRE
> Florida Bar No. 985491
> JEANELLE G. BRONSON
> Florida Bar No. 266337
> Grower, Ketcham, Rutherford, Bronson,
>   Eide & Telan, P.A.
> PO Box 538065
> Orlando, FL  32853-8065
> Phone: (407) 423-9545
> Fax:    (407) 425-7104
> Attorney for Defendants, JAMES MOORE
> & CO., P.L. and E. JAMES HUTTO

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** on the 29th day of June, 2009, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following: U.S. Trustee, 135 West Central Boulevard, Orlando, FL 32801; Mirabilis Ventures, Inc.;, c/o R.W. Cuthill, Jr., Latham Shuker Eden & Beaudine LLP, 341 Maitland Blvd., Suite 120, 390 North Orange Avenue, Suite 600, Orlando, FL 32751; Elizabeth A. Green, Esquire, Jimmy D. Parrish, Esquire; Jennifer S. Eden, Esquire, Latham Shuker Eden & Beaudine LLP, 390 North Orange Avenue, Suite 600, Orlando, FL 32801.

/s/ Charles J. Meltz
CHARLES J. MELTZ, ESQUIRE
Florida Bar No. 985491
JEANELLE G. BRONSON, ESQUIRE
Florida Bar No. 266337
Grower, Ketcham, Rutherford, Bronson,
Eide & Telan, P.A.
PO Box 538065
Orlando, FL 32853-8065
Phone: (407) 423-9545
Fax:    (407) 425-7104
Counsel for Defendants,
JAMES MOORE & COMPANY, P.L.
AND E. JAMES HUTTO

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In Re:

MIRABILIS VENTURES, INC.,

    Debtor.

_____/

CASE NO.: 6:08-bk-04327-KSJ

CHAPTER 11

MIRABILIS VENTURES, INC.,

    Plaintiff,

v.

JAMES MOORE & CO., P.A., a Florida
Limited liability corporation, and E. JAMES
HUTTO, an individual,

    Defendants.

_____/

ADV. PRO. NO.: 6:08-ap-00228-KSJ

## AMENDED COMPLAINT

Plaintiff, Mirabilis Ventures, Inc., ("MVI" or "Mirabilis"), by and through its undersigned counsel, and pursuant to Rule 7003 and Rule 7015, *Federal Rules of Bankruptcy Procedure*, hereby files its amended complaint and sues Defendants, JAMES MOORE & CO., P.A., a Florida limited liability corporation ("Moore") and E. JAMES HUTTO, an individual ("Hutto")(collectively, "Defendants") and in support states as follows:

## I.  NATURE OF THE ACTION

This is an action for compensatory damages against the Defendants stemming from their involvement and representation of MVI. In summation, Defendants were hired by MVI to conduct an audit of Mirabilis's business, including but not limited to,

**EXHIBIT "A"**

determining the tax liability that ultimately lied with Mirabilis. Defendants failed to inform Mirabilis that Mirabilis was responsible for the subject payroll taxes and as a result, Mirabilis has suffered damages. Alternatively, Mirabilis seeks to avoid the fraudulent transfer of funds received by Moore.

## II.  JURISDICTION AND VENUE

1.      This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §1334 and 28 U.S.C. §157 because it arises in and is related to a case under Title 11 of the United States Code.

2.      Defendants are subject to the personal jurisdiction of this Court because many of the tortuous acts alleged herein occurred in or were directed to the state of Florida.    Furthermore, Defendants are also subject to personal jurisdiction pursuant to 18 U.S.C. §1965(d).  Defendant, Moore, is a Florida professional association with its principal place of business located in Alachua County, Florida.

3.      Venue is proper in this district pursuant to 28 U.S.C. §1409, 28 U.S.C. 1391(b), and 18 U.S.C. §1965(c).

4.      This is a core proceeding pursuant to 28 U.S.C. §157(b)(2).

## III.  THE PARTIES AND OTHER RELEVANT ENTITIES

5.      Plaintiff, MVI, is a Nevada corporation with its principal place of business located at 341 N. Maitland Ave., Suite 201 in Maitland, Florida.

6.      Moore is a Florida limited liability corporation with its principal place of business in Alachua County, Florida.

7.      Upon information and belief, Hutto is a citizen and resident of Alachua County, Florida, and sui juris, who was at all times relevant to the events described herein

2

a Partner, employee and agent of Moore and was acting within the scope of his partnership, employment and that agency.

8.    All conditions precedent to the bringing of this action has occurred, or their performance has been waived by Defendants.

## IV.    THE SUNSHINE COMPANIES

9.    In 2004, Presidion Corporation ("Presidion") entered into a consulting agreement with AQMI Strategy Corporation ("AQMI") to provide consulting work regarding the divestiture and liquidation of certain wholly owned subsidiaries of Presidion.

10.    The Presidion subsidiaries are more commonly know as The Sunshine Companies ("Sunshine Companies").[1]

11.    The deal was an arms-length transaction and both parties were represented by counsel.

12.    During this time, Presidion and the Sunshine Companies had a large amount of outstanding payroll tax liabilities.

13.    AQMI's engagement and proposed resolution centered on the deconsolidation, divestiture and liquidation of the Sunshine Companies.

14.    AQMI's strategy regarding liquidations involved using the funds resulting from the divestiture to pay creditors, including the Internal Revenue Service ("IRS").

15.    The proposed strategy allowed Presidion to deconsolidate its financials and separate itself from the excessive liabilities associated with its subsidiaries, allowing it to continue to conduct business as a going concern ("Sunshine Companies Plan").

---

[1] Consisting of (1) Sunshine Staff Leasing, Inc.; (2) Sunshine Companies II, Inc.; (3) Sunshine Companies III, Inc.; and (4) Sunshine Companies IV, Inc.

3

16.    On or about January 6, 2005, AQMI and its various professionals, met with IRS revenue officer, Judith Berkowitz to inform the IRS of the estimated tax debt of the Sunshine Companies and the plan for resolution of the debt.

17.    The IRS never objected to the plan or otherwise raised any issues regarding the illegality of the Sunshine Companies Plan.

## V.    THE PRESIDION REORGANIZATION PLAN AND MIRABILIS VENTURES, INC.

18.    On October 28, 2004, the entity known as Stellar Industries, Inc. changed its name to Mirabilis Ventures, Inc.  At its inception, Mirabilis had only one shareholder (Yaniv Amar) and only one director (Gailie Hartman).

19.    Mirabilis was a private equity company, which acquired companies that had a strategic fit into its unique business model.  Acquired companies either fit into the four primary specialization categories – real estate, construction, chain store development, and human resources – or they provided necessary goods and services to the core companies.

20.    In May 2005, AQMI was approached again by Presidion regarding  further problems with Presidion's remaining PEO operations, particularly PSI and its wholly-owned PEO operating subsidiaries, Professional Benefits Solutions, Inc. a/k/a Presidion Solutions, VII, Inc. ("PBS") and Paradyme, Inc. ("Paradyme").

21.    The problems stemmed from the threatened cancellation of worker's compensation insurance coverage, shortfall of working capital for PEO operations, and a tax liability which had increased to over three million dollars since January 2005.

4

22.    Drawing from what appeared to be the success of the previous Sunshine Companies Plan, AQMI proposed a plan of reorganization designed to restore, preserve and maximize the inherent value of Presidion's assets ("PBS Plan").

23.    The PBS plan would utilize Mirabilis, and specifically, AEM, to acquire and rehabilitate the Presidion PEO Book of Business.

24.    A key element of the reorganization plan called for the interim nonpayment of federal employment taxes by PBS.

25.    The collected taxes would then be truthfully reported but not remitted.

26.    The collected, yet unpaid, taxes would then be used to fund the PEO operations, particularly paying workers' compensation insurance premiums, reorganize advisors and secured creditors.

27.    This would allow the business to continue until it was restored to a position wherein it could pay all of its outstanding liabilities, including the outstanding tax liabilities ("PBS Plan").

28.    In order for the PBS Plan to be accomplished, the Sunshine Plan would also have to be finalized, drawing the two plans together.

29.    The PBS Plan and Sunshine Plan were then brought to the attention of Mirabilis for consideration.

## VI.   RETENTION AND INVOLVEMENT OF MOORE AND HUTTO BY MIRABILIS VENTURES, INC. AND THE APPROVAL OF THEPBS PLAN

30.    In late 2004, Defendants were retained by Mirabilis to conduct an audit for years ending in 2004 and 2005, and Defendants issued an audit report for Mirabilis which was dated July 17, 2006.

31.    In conjunction with its duties owned to Mirabilis, Defendants also provided tax advice to Mirabilis, including but not limited the following:

a.    The audit opinion, which had an "except for" clause for certain entities which were defined as Variable Interest Entities ("VIE") and the effects they could have on the financial statements;

b.    Tax advise regarding whether Mirabilis would be responsible for the subject payroll taxes as a result of their acquisition of the Presidion book of business; and

c.    Assisted in answering questions asked by Mirabilis regarding its civil and criminal liability regarding non-payment of the payroll taxes.

32.    Furthermore, Defendants had previously endorsed the PBS Plan as legal and legitimate under Federal, state and local tax laws through an audit of MVI's financials in 2005 and 2006.  Mirabilis relied on Defendants' tax advise when approving the PBS Plan and otherwise making business decisions regarding Mirabilis' future investments.

33.    From 2005 through 2007, Moore and Hutto were paid thousands of dollars (the "Funds") for tax advice and audit work given to Mirabilis.

## VII.    THE UNITED STATES OF AMERICA'S CIVIL FORFEITURE ACTION AGAINST MIRABILIS

34.    In late November 2006, Mirabilis executives were notified that a federal grand jury investigation had commenced with regard to the operations of Presidion and Mirabilis.

35.    A week later, Defendants raised, for the very first time,  a concern about the potential illegality of failing to pay the outstanding payroll taxes.

6

36.     Subsequent to this time, the United States of America filed an *in rem* civil forfeiture action against the assets of Mirabilis.

37.     By January 2007, Mirabilis and AEM had laid off all non-key employees, including a number of officers and managers, and had closed a majority of its businesses.

38.     This allowed Mirabilis to sustain operations and remain current with its taxes.

39.     Unfortunately, news of the federal grand jury investigation and nonpayment of payroll taxes leaked to the press, resulting in several negative articles, which decimated the PEO book of business and destroyed the operations of Mirabilis.

40.     On or about May 1, 2007, Mirabilis was forced to liquidate its operations and sold the PEO book of business to O2HR, LLC for approximately Fifteen Million Dollars ($15,000,000.00).

41.     On May 27, 2008, the Debtor filed its voluntary petition for relief with the Middle District of Florida Bankruptcy Court (the "Petition Date").

42.     The Chapter 11 filing came primarily as a result of an *in rem* civil forfeiture action filed by the United States of America against certain assets of Mirabilis, which effectively caused Mirabilis to be unable to pursue claims and litigation against various third parties.

43.     The *in rem* civil forfeiture action was filed based upon the criminal investigation of Mr. Amodeo.

44.     In an effort to preserve equity for all of its creditors and other potential creditors, Mirabilis deemed a Chapter 11 liquidation plan as in the best interest of all its creditors.

## VIII.   COUNT I – NEGLIGENCE (ALL DEFENDANTS)

45.     MVI re-alleges and re-states paragraphs 1 through 44 as if fully set forth herein.

46.     At all times material hereto, an accountant-client relationship existed between MVI and Defendants.

47.     By accepting employment to render tax advice and conduct an audit for MVI, Defendants had a duty to use such skill, prudence, and diligence as other accountants and tax professionals of ordinary skill and capacity commonly possesses and exercises in the performance of the tasks they undertake.

48.     Defendants breached their aforementioned duties and deviated from the applicable standards of professional care, by virtue of their conduct described hereinabove, including but not limited to, Defendants failure to advise MVI, its subsidiaries and related companies that the Sunshine Companies Plan, PBS Plan and MVI's operations could result in criminal and civil liability for MVI, its subsidiaries and related companies.

49.     As a direct and proximate result of the Defendants' negligence, MVI, its subsidiaries and related companies have suffered damage to their business, property, as well as its creditors, and accordingly seek compensatory damages.

WHEREFORE, Plaintiff, Mirabilis Ventures, Inc., demands judgment against Defendants: (1) awarding the amount of principal damages incurred by MVI due to Defendants' actions; (2) awarding prejudgment and post-judgment interest at the maximum rate allowed by law; (3) awarding court costs; and (4) awarding any other relief this Court deems appropriate.

## IX.  COUNT II – BREACH OF FIDUCIARY DUTY
## (ALL DEFENDANTS)

50.     MVI re-alleges and re-states paragraphs 1 through 44 as if fully set forth herein.

51.     At all times material hereto, a fiduciary relationship existed between MVI, and Defendants, particularly, an accountant-client relationship existed between MVI, its subsidiaries and related companies and Defendants.

52.     Defendants each breached their fiduciary duties to MVI, by virtue of their conduct described hereinabove, particularly, Defendants each failed to advise MVI that entities with the authority to exercise significant control over the financial affairs of a company have a statutory duty to collect, withhold, truthfully account for, and pay over payroll "trust fund" taxes and that failure to intervene to stop and/or mitigate the nonpayment of collected payroll "trust fund" taxes collected could result in significant liability, particularly criminal liability, despite multiple requests from MVI as to the potential consequences of the Sunshine Companies Plan, PBS Plan and MVI's operations.

53.     As a direct and proximate result of Defendants' breach of fiduciary duties, MVI, its subsidiaries and related companies have been damaged in their business and property, and accordingly seek compensatory damages.

WHEREFORE, Plaintiff, Mirabilis Ventures, Inc., demands judgment against Defendants: (1) awarding the amount of principal damages incurred by MVI due to Defendants' actions; (2) awarding prejudgment and post-judgment interest at the maximum rate allowed by law; (3) awarding court costs; and (4) awarding any other relief this Court deems appropriate.

9

## X.  COUNT III
## NEGLIGENT MISREPRESENTATION (ALL DEFENDANTS)

54.    MVI re-alleges and re-states paragraphs 1 through 44 as if fully set forth herein.

55.    This is a cause of action against Defendants for negligent misrepresentation.

56.    Defendants knew, or should have known, that MVI, its subsidiaries and related companies were relying on the information supplied and representations and statements made by Defendants in connection with their representation of MVI's entities in deciding how to run and operate their businesses.

57.    Defendants owed MVI, its subsidiaries and related companies a duty of reasonable care, skill and diligence to ensure that all of the information supplied and representations and statements made to or on behalf of MVI and its related entities were true and accurate.  This duty required Defendants to reasonably investigate the facts pertinent to the representation and provide MVI and its related entities with true and accurate information in connection with their legal representation.

58.    Defendants breached their duty by making material negligent misrepresentations and omissions described above when in the exercise of reasonable care should have known facts or circumstances indicating that these negligent misrepresentations and omissions were materially misleading at the time they were made.

59.    As a direct and proximate result of the negligent misrepresentations made by Defendants, MVI, its subsidiaries and related companies have suffered damages to their business and property, and accordingly seek compensatory damages.

WHEREFORE, Plaintiff, Mirabilis Ventures, Inc., demands judgment against Defendants: (1) awarding the amount of principal damages incurred by MVI due to Defendants' actions; (2) awarding prejudgment and post-judgment interest at the maximum rate allowed by law; (3) awarding court costs; and (4) awarding any other relief this Court deems appropriate.

## XI.  COUNT IV
## PROFESSIONAL NEGLIGENCE (ALL DEFENDANTS)

60.     MVI re-alleges and re-states paragraphs 1 through 44 as if fully set forth herein.

61.     This is a cause of action against Defendants for professional negligence.

62.     As a result of their legal representation of MVI, its subsidiaries and related companies, Defendants knew or should have known that MVI and its entities were relying on their work product, representations, and statements in deciding how to operate and conduct their businesses.

63.     Defendants owed a duty to MVI, its subsidiaries and related companies to exercise reasonable care, skill, and diligence in order to ensure that all of the information obtained and supplied to MVI, in connection with their legal representation, was true and accurate.

64.     Defendants breached their duty of care by making the misrepresentations and omissions described above when, in the exercise of reasonable care; they should have known that these misrepresentations were misleading at the time they were made.

65.     As a direct and proximate result of the professional negligence of Defendants, MVI, its subsidiaries and related companies have suffered damages to their business and property, and accordingly seek compensatory damages.

WHEREFORE, Plaintiff, Mirabilis Ventures, Inc., demands judgment against Defendants: (1) awarding the amount of principal damages incurred by MVI due to Defendants' actions; (2) awarding prejudgment and post-judgment interest at the maximum rate allowed by law; (3) awarding court costs; and (4) awarding any other relief this Court deems appropriate.

## XII.  COUNT V
## NEGLIGENT SUPERVISION (AGAINST MOORE)

66.     MVI re-alleges and re-states paragraphs 1 through 52 as if fully set forth herein.

67.     This is a cause of action against Moore for the negligent supervision of Holtz.

68.     Moore owed MVI, its subsidiaries and related companies a duty to use reasonable care in supervising the conduct and activities of Hutto in connection with their representation of MVI, its subsidiaries and related companies.

69.     Moore breached its duty of reasonable care by failing to supervise Hutto to ensure that his conduct and activities were true and accurate.

70.     As a direct and proximate result of this breach, MVI and its related entities have suffered damages to their business and property, and accordingly seek compensatory damages.

WHEREFORE, Plaintiff, Mirabilis Ventures, Inc., demands judgment against Moore: (1) awarding the amount of principal damages incurred by MVI due to Moore's actions and inactions; (2) awarding prejudgment and post-judgment interest at the maximum rate allowed by law; (3) awarding court costs; and (4) awarding any other relief this Court deems appropriate.

## XIII.  COUNT VI (IN THE ALTERNATIVE)
### FRAUDULENT TRANSFER RECEIVED BY MOORE UNDER
### 11 U.S.C. §§ 548, AND 550(a)(2)

71.     Paragraphs 1 through 44 inclusive are re-alleged and incorporated herein by reference.

72.     This action is made in the alternative to the aforementioned counts, pursuant to 11 U.S.C. §550(a)(2), from Moore as the immediate transferee of the Funds from Mirabilis.

73.     Within two years prior to commencing the instant action, Mirabilis, directly or indirectly, transferred the Funds to or for the benefit of Moore.

74.     Mirabilis received no fair consideration in exchange for the Funds.

75.     Mirabilis was insolvent on the dates the Funds were transferred and remained insolvent continuously thereafter.

76.     At the time of the Funds transfer, Mirabilis was engaged in a business or transaction for which the remaining property of Mirabilis constituted an unreasonably small amount of capital in relation to the business or transaction.

77.     At the time of the Fund transfer, Mirabilis intended to incur, believed or reasonably should have believed that it would incur, debts that would be beyond Mirabilis' ability to pay as they became due.

78.     There is at least one actual holder of an allowed unsecured claim, pursuant to 11 U.S.C. §502, who would have standing to assert a claim for relief herein.

79.     The transfer of the Payment are avoidable under 11 U.S.C. §548 and 11 U.S.C. §550(a).

13

80.    Pursuant to 11 U.S.C. § 550(a), the recovery of property for the benefit of Mirabilis' estate is authorized to the extent the transfer of the Funds is avoided under 11 U.S.C. §548.

**WHEREFORE**, Mirabilis requests that this Court enter a judgment against Moore: (i) avoiding the Funds transfer, pursuant to 11 U.S.C. §548; (ii) recovering the value of the Funds from Moore, pursuant to 11 U.S.C. §550; (iii) granting interest from the date of the transfer of the Funds; (iv) granting all costs from this action; and (v) for such other and further relief as the Court deems just and proper.

### XIV. COUNT VII (IN THE ALTERNATIVE)
### FRAUDULENT TRANSFER RECEIVED BY DEFENDANT MOORE UNDER 11 U.S.C. §§544(b) and 55(A)(2), and FLA. STAT. §§726.105(1)(a) AND (b), 726.106(1), AND 726.108

81.    Mirabilis re-states and re-alleges paragraphs 1 through 44 as if fully set forth herein.

82.    This is an action made in the alternative to the aforementioned counts. This is an action to recover fraudulent transfers pursuant to 11 U.S.C. §544(b), 11 U.S.C. §550(a)(2) and Fla. Stat. § 726.101 *et seq.* ("FUFTA").

83.    Within four years prior to commencing the instant action, Mirabilis, directly or indirectly, transferred the Funds to or for the benefit of Moore.

84.    Mirabilis received no fair consideration in exchange for the Funds.

85.    Mirabilis was insolvent on the dates the Funds were transferred and remained insolvent continuously thereafter.

14

86.    At the time of the Funds transfer, Mirabilis was engaged in a business or transaction for which the remaining property of Mirabilis constituted an unreasonably small amount of capital in relation to the business or transaction.

87.    At the time of the Fund transfer, Mirabilis intended to incur, believed or reasonably should have believed that it would incur, debts that would be beyond Mirabilis' ability to pay as they became due.

88.    There is at least one actual holder of an allowed unsecured claim pursuant to 11 U.S.C. §502, who would have standing to assert a claim for relief under the FUFTA.

89.    The Funds transfer is avoidable under Fla. Stat. §§ 726.105(1)(b), 726.106(1), and 726.108(1)(a) and 11 U.S.C. §544(b) .

90.    Pursuant to 11 U.S.C. §550(a) and Fla. Stat. § 726.108(1)(a) the avoidance and recovery of the Funds is authorized to the extent the Funds transfer is avoided under FUFTA and 11 U.S.C. §544(b).

**WHEREFORE,** Mirabilis Ventures, Inc. requests that this Court enter a judgment against Moore: (i) avoiding all Funds transfers pursuant to 11 U.S.C. §544(b), Fla. Stat. § 726.108 and Fla. Stat. § 726.101 *et seq*.; (ii) recovering the value of the Funds from Moore, pursuant to 11 U.S.C. §550 ; (iii) granting interest from the first date of the Funds transfer; (iv) granting all costs from this action; and (v) for such other and further relief as the Court deems just and proper.

Respectfully submitted this 17th day of April, 2009.

/s/ Elizabeth A. Green
Elizabeth A. Green
Florida Bar. No. 0600547
Jennifer S. Eden
Florida Bar No. 0867594
Latham, Shuker, Eden & Beaudine, LLP
390 North Orange Avenue, Suite 600
Orlando, Florida 32801
Telephone: (407) 481-5800
Facsimile:  (407) 481-5801
Attorneys for Debtor/Plaintiff

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In Re:

MIRABILIS VENTURES, INC.,

      Debtor.

_____/

CASE NO.: 6:08-bk-04327-KSJ

CHAPTER 11

MIRABILIS VENTURES, INC.,

      Plaintiff,

v.

JAMES MOORE & CO., P.A., a Florida
Limited liability corporation, and E. JAMES
HUTTO, an individual,

      Defendants.

_____/

ADV. PRO. NO.: 6:08-ap-00228-KSJ

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing has been furnished via U.S. mail to **Charles J. Meltz, Esquire** and **Jeanelle G. Bronson, Esquire**, Grower, Ketcham, Rutherford, Bronson, Eide & Telan, P.A., PO Box 538065, Orlando, Florida 32853-8065 on this 17th day of April 2009.

/s/Elizabeth A. Green_____
Elizabeth A. Green, Esq.

17